UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAWRENCE BOUDREAU and
WANDA BOUDREAU,

    Plaintiffs,
v.                            Case No. 8:21-cv-1158-VMC-AEP

SHERIFF CHRIS NOCCO,
in his official capacity as
Sheriff of Pasco County,

    Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Sheriff Chris Nocco's Motion to Dismiss (Doc. # 16), filed on July 7, 2021. Plaintiffs Lawrence Boudreau and Wanda Boudreau responded on July 13, 2021. (Doc. # 18). For the reasons that follow, the Motion is granted in part and denied in part.

**I.    Background**

Lawrence and Wanda Boudreau are a married couple living in Pasco County, Florida.[1] (Doc. # 1 at 1-2). Because of "vascular disease," Lawrence "is unable to walk more than 10 feet without taking a break." (Id. at 1). Wanda is "unable to

---

[1] Because Plaintiffs share the same last name, the Court will use their first names when necessary for the sake of clarity.

1

walk without extreme pain" because of "bad knees and nerve damage from shingles." (Id. at 2). Thus, they allege they are both "qualified individual[s] with a disability within the meaning of the [Americans with Disabilities Act (ADA)], Rehabilitation Act, and all applicable regulations." (Id. at 1-2). Because of their disabilities, the Boudreaus both "rel[y] on a golf cart for mobility." (Id. at 2).

In March 2020, Lawrence contacted the Sheriff's Office to "request[] that he and his wife be permitted to use their golf cart for mobility on the public sidewalks" of Pasco County. (Id. at 3). In June 2020, Lawrence "contacted the Sheriff again asking for assurances that he and his wife will not be pulled over while driving their golf cart on the public sidewalks due to their disabilities and asked for an accommodation." (Id.).

On August 19, 2020, the Boudreaus were pulled over by Sheriff Sergeant Richard Scilex while Wanda was driving the golf cart along a public sidewalk. (Id.). "Despite knowing full well that [Wanda] was disabled and the ADA regulations, Sgt. Scilex issued Wanda [] a warning for driving the golf cart on a sidewalk in violation of Fla. Stat. § 316.212." (Id.). "Sgt. Scilex took the position that the ADA does not provide [the Boudreaus] relief from the statute." (Id.).

Because of this warning, Lawrence "emailed the Sheriff maintaining that he should be provided an ADA accommodation to use [] a golf cart on the public sidewalks." (Id.). Captain Stephen Hartnett responded, asserting that "Sgt. [] Scilex's actions by issuing a warning did not violate the ADA, and that his use of the golf cart as a mobility scooter is not consistent with the ADA." (Id.).

The Boudreaus continued to use their golf cart on the sidewalks. On October 13, 2020, "Sgt. [] Scilex . . . issued [] Wanda a $164 ticket for violating Florida Statute § 316.212, which forbids any non-human-powered vehicle on sidewalks, with the exception of motorized wheelchairs." (Id. at 4). Section 316.212, Fla. Stat., states that "[t]he operation of a golf cart upon the public roads or streets of this state is prohibited" except as provided within that section. Fla. Stat. § 316.212. Section 316.212(8) provides that "A local governmental entity may enact an ordinance relating to: . . . (b) Golf cart operation on sidewalks adjacent to specific segments of municipal streets, county roads, or state highways within the jurisdictional territory of the local governmental entity if" the local governmental entity makes certain findings and follows certain procedures. Fla. Stat. § 316.212(8)(b). There is no allegation that Pasco

County has enacted an ordinance permitting golf carts on sidewalks under any circumstances.

"On February 19, 2021, [] Wanda attended a final hearing on the purported traffic violation. At trial, [] Wanda maintained that she did not violate Florida Statute § 316.212, since she was protected by the ADA." (Doc. # 1 at 4). "Despite demonstrating to the Court that she was disabled within the meaning of the ADA, the Sixth Judicial Circuit in and for Pasco County, Florida found [] Wanda in violation of the statute and ordered her to pay a civil penalty in the amount of $164.00." (Id.).

The Boudreaus initiated this action against Nocco, in his official capacity as Sheriff of Pasco County, on May 13, 2021. (Doc. # 1). The complaint asserts two counts: for violation of Title II of the ADA (Count I) and violation of Section 504 of the Rehabilitation Act (Count II). (Id.). The Boudreaus seek compensatory damages and a declaration that "the Pasco County Sheriff's Office violated the ADA and Rehabilitation Act [(1)] by prohibiting [them] from using their golf cart to mobilize on public sidewalks and that they did not violate any City, County, or State traffic law(s), and [(2)] by failing to provide [them] a reasonable accommodation under the law." (Id. at 7-8). Finally, the

Boudreaus request entry of a "permanent injunction against the Pasco County Sheriff's Office [enjoining it] from issuing [the Boudreaus] any additional violations for using their golf carts to mobilize on public sidewalks." (Id. at 8).

Now, Nocco moves to dismiss the complaint. (Doc. # 16). The Boudreaus have responded (Doc. # 18), and the Motion is ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true

5

a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). "The scope of review must be limited to the four corners of the complaint" and attached exhibits. <u>St. George v. Pinellas Cnty.</u>, 285 F.3d 1334, 1337 (11th Cir. 2002).

**III. <u>Analysis</u>**

    **A.  <u>ADA and Rehabilitation Act</u>**

Title II of the ADA prohibits discrimination in public services and transportation: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 42 U.S.C. § 12132. "With the exception of its federal funding requirement, the [Rehabilitation Act] uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." <u>Badillo v. Thorpe</u>, 158 F. App'x 208, 214 (11th Cir. 2005). To state a claim under Title II, a plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; (3) by reason of such disability."

6

Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001)(internal citations omitted).

"In cases where the alleged violation involves the denial of a reasonable modification/accommodation, the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request." Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006)(citation and internal quotation marks omitted). "[W]hether a requested accommodation is required by law is highly fact-specific, requiring case-by-case determination." United States v. Hialeah Hous. Auth., 418 F. App'x 872, 875 (11th Cir. 2011)(citation omitted)(discussing reasonable accommodations in the context of the Fair Housing Act); see Holbrook v. City of Alpharetta, 112 F.3d 1522, 1527 (11th Cir. 1997)(stating, in context of an ADA employment discrimination claim, "what is reasonable for each individual employer is a highly fact-specific inquiry that will vary depending on the circumstances and necessities of each employment situation").

First, Nocco argues that the Boudreaus may only bring a claim against him if they maintain that the law regarding golf carts on sidewalks is unconstitutional. (Doc. # 16 at 10-11). But, Nocco has failed to cite any on-point authority for this proposition. Thus, the Court rejects this argument.

7

See Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 298 (D.D.C. 2012)("[T]he [defendant] has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here."). Nocco may raise this argument, if supported by legal authority, at summary judgment.

Next, Nocco argues that he is not the correct defendant in this case; rather, according to him, the Boudreaus should have sued Pasco County. (Doc. # 16 at 11-12). Nocco emphasizes that "he has not been given the ability or authority to enact legislation" and he "does not have the unilateral authority to bypass Florida Statutes concerning enforcement of Florida law as it pertains to golf carts and sidewalks." (Id. at 12).

The Court rejects this argument at the motion to dismiss stage. The complaint does not request that the statutes and ordinances regarding use of golf carts on sidewalks be rewritten by Nocco. Rather, the complaint alleges that Nocco failed to provide the reasonable accommodation of selective enforcement of the law in light of the Boudreaus' use of their golf cart for mobility purposes. (Doc. # 1 at 3). And Nocco has presented no authority for the proposition that an officer's not enforcing a law against a disabled individual

may not qualify as a reasonable accommodation under the ADA or Rehabilitation Act. Nocco may raise this argument again at summary judgment.

The Court is also unpersuaded by Nocco's argument that the Boudreaus "have also failed to show that the actions by the Sheriff were discriminatory." (Doc. # 16 at 13). Nocco essentially argues that the Boudreaus have failed to state a claim because they have not alleged in the complaint that they are unable to use other mobility devices, which are already permitted under state law. (Id.). But whether the Boudreaus are able to use other mobility devices goes to whether their requested accommodation of using their golf cart on the sidewalks is reasonable. Again, this is a fact-specific inquiry that should be left to the summary judgment stage. See Hialeah Hous. Auth., 418 F. App'x at 875 ("[W]hether a requested accommodation is required by law is highly fact-specific, requiring case-by-case determination."). For now, the Boudreaus have plausibly alleged all elements of their claims under the ADA and Rehabilitation Act by asserting that they are disabled and are being denied the benefit of using the sidewalks of Pasco County because Nocco has failed to provide them a reasonable accommodation.

Likewise, the Court declines to dismiss the Boudreaus' request for compensatory damages. "In the ordinary course, proof of a Title II or [Section] 504 violation entitles a plaintiff only to injunctive relief." Welch v. City of Hartselle, 423 F. Supp. 3d 1277, 1281 (N.D. Ala. 2019)(citation omitted). "To recover compensatory damages for a violation of Title II of the ADA, a plaintiff must prove that the public entity engaged in intentional discrimination." Id. The Court declines to dismiss the Boudreaus' request for compensatory damages at this time. The allegations of the complaint plausibly support a finding of intentional discrimination and thus the Boudreaus may pursue this theory during discovery. Whether or not Nocco engaged in intentional discrimination is a fact-specific issue better determined at the summary judgment stage.

**B.    Injunctive Relief**

Next, Nocco argues that the request for injunctive relief should be dismissed because the Boudreaus have "not alleged an irreparable injury," "have failed to allege that a remedy in equity is needed after considering the balance of hardship of the [Boudreaus] and that of the need for the Sheriff to enforce the law," and they "have not alleged that the public interest would be served by the Court granting

10

their request for a permanent injunction." (Doc. # 16 at 16). However, Nocco does not argue that the Boudreaus lack standing to pursue injunctive relief.

For the pleading stage, the Court finds the Boudreaus have sufficiently alleged a basis for injunctive relief. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)(explaining that, to obtain a permanent injunction, a "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction"). They have plausibly alleged that being prevented from using their golf cart as a mobility device is an irreparable injury and that injunctive relief is necessary to ensure their ability to use their golf cart as a mobility device in the future. Likewise, allowing disabled citizens the ability to use mobility devices serves the public interest. And there is good reason to believe that the Boudreaus, who have continued using their golf cart despite warnings and a ticket, will continue to use their golf cart and face future enforcement actions by the Sheriff.

11

While Nocco may certainly challenge whether the evidence supports entry of an injunction after discovery, dismissal of the request for injunctive relief now is premature.

C.  **Rooker-Feldman Issue**

Finally, Nocco argues that the complaint's request for a declaration that Wanda "did not violate City, County, or State traffic law(s)" should be dismissed pursuant to the Rooker-Feldman doctrine. (Doc. # 16 at 16-17). "Under the Rooker-Feldman doctrine, a district court lacks jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Valentine v. BAC Home Loans Servicing, L.P., 635 F. App'x 753, 756 (11th Cir. 2015)(quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). The Court agrees that the state court's final judgment regarding the October 2020 ticket issued to Wanda cannot be reviewed by this Court.

And, indeed, the Boudreaus in their response acknowledge that the Rooker-Feldman doctrine "prevents [f]ederal [c]ourts from reviewing state court final judgments" and, thus, they assure the Court they will not "be seeking to redress or appeal [Wanda's] citation in this action." (Doc. # 17 at 18).

Instead, the Boudreaus will merely be seeking "a declaration that the Sheriff violated the ADA and Rehabilitation Act by failing to provide [them] a reasonable accommodation under the law." (Id.).

As the Boudreaus do not oppose dismissal of the complaint's request for a declaration that Wanda did not violate the law, the Court grants Nocco's Motion as to this portion of the requested declaration.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Sheriff Chris Nocco's Motion to Dismiss (Doc. # 16) is **GRANTED** in part and **DENIED** in part. The request for a declaration that Plaintiff Wanda Boudreau did not violate any law is dismissed pursuant to the Rooker-Feldman doctrine. All other claims remain.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 16th day of July, 2021.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE