UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAWRENCE BOUDREAU and
WANDA BOUDREAU,

    Plaintiffs,
v.                                  Case No. 8:21-cv-1158-VMC-AEP

SHERIFF CHRIS NOCCO,
in his official capacity as
Sheriff of Pasco County,

    Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Sheriff Chris Nocco's Daubert Motion to Partially Exclude Testimony of Plaintiff's Expert Jeffrey W. Buckholz (Doc. # 45), filed on April 1, 2022. Plaintiffs Lawrence Boudreau and Wanda Boudreau responded on April 15, 2022. (Doc. # 51). For the reasons that follow, the Motion is denied.

I.    **Background**

Lawrence and Wanda Boudreau are a married couple living in Pasco County, Florida.[1] The Boudreaus are both disabled and wish to use a golf cart as their mobility device on Pasco County sidewalks. But, in 2020, Wanda was cited by a Pasco

---

[1] Because Plaintiffs share the same last name, the Court will use their first names when necessary for the sake of clarity.

1

County Deputy Sheriff for violating Florida Statute § 316.212, which forbids any non-human-powered vehicle on sidewalks, except for motorized wheelchairs.

The Boudreaus sued Nocco, in his official capacity as Sheriff of Pasco County, on May 13, 2021. (Doc. # 1). The complaint asserts two counts: for violation of Title II of the ADA (Count I) and violation of Section 504 of the Rehabilitation Act (Count II). (Id.). The Boudreaus maintain that Nocco violated the ADA and Rehabilitation Act (1) by prohibiting them from using their golf cart to mobilize on public sidewalks and (2) by failing to provide them a reasonable accommodation under the law. (Id.).

The parties undertook discovery and the Boudreaus retained Jeffrey W. Buckholz as a traffic engineering expert. (Doc. # 45-1). Buckholz is "a traffic engineer with 43 years of professional experience," who has "been involved in virtually all aspects of traffic engineering and [has] completed numerous engineering studies involving golf cart operation." (Id. at 3, 7-13). In forming his opinions, Buckholz reviewed the record, Florida law on golf cart usage, and photographs of the Boudreaus' golf cart and US 19 in Pasco County. (Id. at 3-4). He also visited US 19 on December 18, 2021. (Id. at 4).

2

As relevant here, Buckholz opines as follows:

> Pedestrian and bicycle traffic using the sidewalks parallel to US 19 is generally low. . . .
>
> In furtherance of ADA objectives, a reasonable number of low speed golf carts can safely operate on sidewalks located along US 19 in Pasco County wherever the sidewalk is at least 5 feet wide. These golf carts should not be operated at a speed greater than 10 mph and should not be capable of a speed greater than 20 mph.

(Doc. # 45-1 at 4-6).

Now, Nocco moves to exclude these two opinions. (Doc. # 45). The Boudreaus have responded (Doc. # 51), and the Motion is ripe for review.

## II. Discussion

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any scientific testimony or evidence admitted is both

relevant and reliable. See Id. at 589–90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony must show, by a preponderance of the evidence, that the testimony satisfies each requirement. Id.

Nocco failed to organize his arguments around the three factors of qualifications, methodology, and helpfulness. Regardless, based on the Court's review, it appears that Nocco

4

is only challenging Buckholz's methodology as to the opinion about low traffic on US 19 and his qualifications and methodology as to the opinion about the safe operation of a reasonable number of golf carts on the sidewalks. Thus, the Court need only address Buckholz's qualifications and methodology.

### 1. Qualifications

The first question under Daubert is whether Buckholz is qualified to testify competently regarding the matters he intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citations and internal quotation marks

omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

Nocco only challenges Buckholz's qualifications to testify as to "ADA objectives" and argues that "any reference to an opinion as to what he considers to be the objectives of the ADA should be excluded." (Doc. # 45 at 6). Buckholz references ADA objectives very briefly in the following opinion:

> In furtherance of ADA objectives, a reasonable number of low speed golf carts can safely operate on sidewalks located along US 19 in Pasco County wherever the sidewalk is at least 5 feet wide. These golf cars should not be operated at a speed greater than 10 mph and should not be capable of a speed greater than 20 mph.

(Doc. # 45-1 at 6).

Although Buckholz is not an ADA compliance expert, he is minimally qualified to mention the ADA in his opinion about traffic safety. As a traffic engineer, Buckholz is no doubt familiar with the ADA objective of enabling disabled individuals to utilize various mobility devices when safe to do so. Nevertheless, Nocco may cross-examine Buckholz about

6

his familiarity with the ADA at trial. The Motion is denied as to qualifications.

## 2. Reliability

The next question is whether Buckholz's methodology is reliable. "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the

7

conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Seamon, 813 F.3d at 988 (citation omitted).

Nocco argues that Buckholz's methodology is unreliable as to both opinions he challenges. According to him, Buckholz's opinion that traffic on the sidewalks parallel to US 19 is generally low is "vague and unsupported," given that Buckholz "does not cite any pedestrian traffic studies or any reports regarding pedestrian and bicycle traffic on sidewalks parallel to US 19." (Doc. # 45 at 5). As to Buckholz's opinion that a reasonable number of golf carts could safely operate on US 19's sidewalks, Nocco contends that Buckholz's methodology is unreliable because he "does not identify what a 'reasonable' number is or how it is possible for even one, or more than one, four foot wide golf cart to operate on sidewalks at the same time along with pedestrians and bicyclists, and potentially other golf carts." (Id. at 6-7).

The Court disagrees with Nocco as to both opinions. Buckholz's methodology is based on his 43 years of experience

8

as a traffic engineer, his visit to US 19 in December 2021 to observe traffic, and his review of various record materials. (Doc. # 45-1 at 3-4). Such reliance on experience combined with relevant evidence in this case and a site visit is sufficient to establish reliability. See Searcy v. Hamburger, No. CIV.A. 02-Z-2260 (MJW), 2004 WL 5503777, at *1 (D. Colo. Jan. 21, 2004) (finding the traffic engineering expert's methodology in reconstructing an accident reliable based on the expert's "report and his 55 years of experience in assessing and investigating highway accidents," as well as the expert's review of record evidence, including "the traffic accident report, the statements of witnesses, [and] photographs of the accident scene"); see also Dudash v. S.-Owners Ins. Co., No. 8:16-cv-290-JDM-AEP, 2017 WL 1969671, at *3 (M.D. Fla. May 12, 2017) (denying a Daubert motion to exclude an insurance expert and stating that, as "[h]er opinions were formulated based on her review of the record," the "argument that her review is unreliable is unpersuasive").

Any alleged flaws in Buckholz's methodology, including whether he took into account Wanda's deposition testimony about the number of pedestrians on US 19 sidewalks, should be addressed during cross-examination. See Maiz, 253 F.3d at 666

9

("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)). Thus, the Motion is denied as to reliability.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

Defendant Sheriff Chris Nocco's Daubert Motion to Partially Exclude Testimony of Plaintiff's Expert Jeffrey W. Buckholz (Doc. # 45) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 21st day of April, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

10