UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAWRENCE BOUDREAU and
WANDA BOUDREAU,

       Plaintiffs,

v.                                Case No.: 8:21-cv-1158-VMC-AEP

CHRIS NOCCO, in his official capacity
as Sheriff, Pasco County,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiffs Lawrence Boudreau ("Mr. Boudreau") and Wanda Boudreau ("Mrs. Boudreau") (collectively "Plaintiffs") initiated this disability discrimination action against Chris Nocco, in his official capacity as Sheriff of Pasco County, Florida ("Defendant") in 2021, relating to Plaintiffs' use of a golf cart on public sidewalks in Pasco County, Florida (Doc. 1). Plaintiffs allege Defendant violated both Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA") by failing to provide Plaintiffs a reasonable modification that would allow them to use their golf cart on public sidewalks (Doc. 1, ¶¶31-32). Plaintiffs filed a Motion for Partial Summary Judgment on their request for a permanent injunction that would prevent Defendant from enforcing Section 316.212, Florida Statutes, which prohibits the use of golf carts on public sidewalks, against Plaintiffs (Doc. 37). Defendant filed a Motion for Final Summary

Judgment, claiming that because his refusal to grant Plaintiffs a modification was not due to Plaintiffs' disability, Defendant has not violated Title II of the ADA or Section 504 of the RA (Doc. 39). After consideration, it is recommended that Plaintiffs' Partial Motion for Summary Judgment be denied, and Defendant's Motion for Final Summary Judgment be granted.[1]

## I. Background

Lawrence and Wanda Boudreau are a married couple and are both qualified as disabled under the ADA and the RA (Doc. 1, ¶¶3-4). Mr. Boudreau suffers from a vascular disease and occasional vertigo which prevents him from walking more than 10 feet without the assistance of a walker (Doc. 37, ¶2). Mrs. Boudreau suffers from neuropathy caused by shingles, nerve damage, and injuries to her back and legs (Doc. 37, ¶4).

In November 2019, Plaintiffs acquired an electric golf cart which was able to seat two persons and was capable of a forward speed of 12-15 miles per hour (Doc. 37, ¶5; Doc. 39, ¶2). Plaintiffs often utilized the golf cart as a means of transportation to attend doctor appointments and make trips to the grocery store (Doc. 37, ¶5). Though Mr. Boudreau has a driver's license, Plaintiffs do not own a motor vehicle (Doc. 37, ¶5; Doc. 39, ¶7). Before acquiring the golf cart, Plaintiffs relied on public buses, Ubers, and taxi cabs for transportation (Doc. 39, ¶6).

---

[1] The district judge referred the matter for issuance of a Report and Recommendation. *See* 28 U.S.C. § 636.

When utilizing their golf cart, Plaintiffs frequently traversed along sidewalks that run adjacent to state highways U.S. 52 and U.S. 19 (Doc. 39, ¶3). The sidewalks used by Plaintiffs are generally five feet wide and are occasionally boxed in by guardrails (Doc. 39, ¶4). Plaintiffs often encountered pedestrians in the course of their use of the golf cart along the sidewalks, including those walking, riding bicycles, and roller skating (Doc. 39, ¶5). In the event of such encounters, Mrs. Boudreau would blow the horn, causing the pedestrians to step aside, wait for them to pass, or take the golf cart into the grass to allow the pedestrian to pass by (Doc. 39, ¶5).

On two occasions, Mr. Boudreau contacted Defendant to inquire as to Plaintiffs' ability to use their golf cart as a mobility device (Doc. 37, ¶¶17-18; Doc. 39, ¶9). On August 19, 2020, Sergeant Richard Scilex of the Pasco County Sheriff's Office stopped Mrs. Boudreau while she was operating the golf cart on a public sidewalk along U.S. 19 in Pasco County and issued Mrs. Boudreau a warning (Doc. 37, ¶19; Doc. 39, ¶10). Mrs. Boudreau had a handout which she purported to be an ADA printout allowing for the use of golf carts on public sidewalks (Doc. 37, ¶19; Scilex Warning 1 Video, 16:13:34-13:56). Sergeant Scilex provided Mrs. Boudreau with a printout of Florida law regarding the use of golf carts and gave her a map that showed areas around her home where she could drive her golf cart (Doc. 39, ¶11). Following the warning, Mr. Boudreau sent Defendant an email stating that the ADA allows for the use of golf carts as other power-driven mobility devices and stated that he had been informed by other officers that as long as Plaintiffs drove

their golf cart on the sidewalk, they would not get into trouble (Doc. 37-4, at 38). Defendant responded to Mr. Boudreau's email by stating that Sergeant Scilex's did not err in his application of the law and that Mr. Boudreau's definition and application of the golf cart as a mobility scooter was not consistent with its use along the U.S. 19 corridor was not consistent with applicable state statutes (Doc. 37-4, at 38).

On October 9, 2020, Mrs. Boudreau was again stopped by Sergeant Scilex while operating the golf cart on a sidewalk along U.S. 19 (Doc. 39, ¶16). This time, Sergeant Scilex issued Mrs. Boudreau a traffic citation (Doc. 39, ¶16). Mrs. Boudreau was found guilty by a circuit court judge of driving a golf cart on sidewalks where not permitted (Doc. 39, ¶18). Plaintiffs paid the fine and did not appeal (Doc. 39, ¶18). Following the citation hearing, Plaintiffs sold the golf cart in March 2021 (Doc. 39, ¶19). Plaintiffs' daughter then purchased for Plaintiffs a three-wheeled scooter. (Doc. 39, ¶19). After an accident in which Mrs. Boudreau was struck by a car while operating the three-wheel scooter, Plaintiffs' insurance provided her a four-wheeled scooter, which Mrs. Boudreau currently uses (Doc. 39, ¶20).

## II. Standard of Review

Summary judgment is appropriate where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir.

2012). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The existence of some factual disputes between litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48 (emphasis in original). The substantive law applicable to the claims will identify which facts are material. *Id*. at 248. In reviewing the motion, courts must view the evidence and make all factual inferences in a light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant. *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 483 F.3d 1265, 1268 (11th Cir. 2007) (citation omitted). The movant "bears the initial burden of informing the district court of the basis for its motion[ ] and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *Celotex Corp.*, 477 U.S. at 323). The burden then shifts to the nonmovant "to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Jones*, 683 F.3d at 1292 (quoting *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2012)).

### III.   Discussion

As indicated, Plaintiffs seek partial summary judgment on their request for injunctive relief to prevent Defendant from enforcing Florida Statute Section

316.212 against Plaintiffs (Doc. 37). Plaintiffs claim that by refusing to grant Plaintiffs a reasonable modification which would allow Plaintiffs to use their golf cart as a mobility aid when traversing the public sidewalks, Defendant has violated both Title II of the ADA and Section 504 of the RA (Doc. 37). Defendant argues that Plaintiffs were not denied the benefit of services, programs, or activities of his office, and that Plaintiffs are not entitled to compensatory damages because there was no discriminatory intent in denying Plaintiffs a modification. Therefore Defendant asserts that Defendant has not violated the ADA or the RA and thus is entitled to summary judgement on all of Plaintiffs' claims (Doc. 39).

## A. Title II of the ADA and § 504 of the RA

Title II of the ADA and Section 504 of the RA prohibit discrimination on the basis of disability in public services and transportation. 42 U.S.C. § 12132; 29 U.S.C. § 794(d). Specifically, Title II states: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 states that no entity receiving federal funds shall discriminate against an individual based on that individual's disability. 29 U.S.C. § 794(a). "With the exception of its federal funding requirement, the [Rehabilitation Act] uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005). The ADA's definition of "public entity" includes "any State or local government." 42 U.S.C. § 12131. Thus,

Defendant is a "public entity" within the meaning of Title II and is therefore subject to the ADA and RA.

The regulations implementing the ADA's prohibition against discrimination require public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130 (b)(7); *see also Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1299 (S.D. Fla. 2016) (stating that the RA—and thus the ADA—"requires only those accommodations that are necessary to ameliorate a disability's effect of preventing meaningful access to the benefits of, or participation in, the program at issue."); *see also  Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("The balance . . . requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers. The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made."). "A public entity must make its services, program, or activity 'when viewed in its entirety,' 'readily accessible to and usable by individuals with disabilities,' except where compliance would result in a 'fundamental alteration' or an 'undue burden.'" *Young v. City of Claremore, Okla.*, 411 F. Supp. 2d 1295, 1306 (N.D. OK 2005) (citing *Parker v. Universidad de Puerto Rico*, 255 F.3d 1, 5 (1st Cir. 2000) and 28 C.F.R. § 35.150(a) and 35.150(a)(3)).

To prevail under Title II or Section 504, a plaintiff must show "(1) that he is qualified individual with a disability; (2) that he was excluded from participation in or…denied the benefits of the services, programs, activities of a public entity or otherwise discriminated against by such entity; (3) by reason of such disability." *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (internal citations omitted). The elements of a Title II claim may be further refined based on the discrimination theory on which the plaintiff relies. "A plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations." *Rylee v. Chapman*, 316 Fed.Appx. 901, 906 (11th Cir. 2009)[2]; *see also Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 (11th Cir. 2008) (stating that the ADA "recognizes disparate treatment and reasonable accommodation theories"). In the instant case, Plaintiffs rely on a failure to accommodate theory. Additionally, there is no dispute that Plaintiffs are qualified individuals with disabilities under Title II or that Pasco County sidewalks are a public benefit (Doc. 39). Therefore, the Court conducts an individualized analysis to determine whether the modification Plaintiffs seek is necessary and reasonable.

### i.  The Modification Plaintiffs Seek is Not Necessary

Plaintiffs claim that Defendant denied them the benefits of the use of sidewalks (Doc. 37, at 16). Specifically, Plaintiffs argue that use of a golf cart on public sidewalks is the appropriate modification because it allows Plaintiffs to travel

---

[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

together, carry their walkers and groceries, travel up to a maximum speed of 15 mph, and has a range of 40 miles per charge on batteries (Doc. 37, ¶6-7). Plaintiffs claim that Defendant excluded them from the above defined benefit on the basis of their disability by refusing to grant Plaintiffs a reasonable modification of policy that would allow them to operate their golf cart on public sidewalks (Doc. 37).

Generally, Florida Statutes Chapter 316 prohibits the use of golf carts on public sidewalks. Fla. Stat. § 316.1995. However, Section 316.1995(3) specifically exempts motorized wheelchairs as being allowed on sidewalks. Fla. Stat. § 316.1995(3). Moreover, Section 316.2128 permits the use of motorized scooters and micro mobility devices on sidewalks. Fla. Stat. § 316.2128. However, Florida law allows a local government entity to enact an ordinance permitting the use of golf carts under certain circumstances where, among other things, the sidewalks are at least 8 feet wide, the safety of pedestrians is ensured, and the Department of Transportation has been consulted. Fla. Stat. § 316.212(8)(b). It is undisputed that Plaintiffs own and currently utilize a mobility scooter (Doc. 39, ¶20). Thus, a statutory exception is already in place for Plaintiffs to utilize the public sidewalks. Moreover, under Florida law, Plaintiffs may also engage their local government to enact an ordinance permitting the use of golf carts. Nonetheless, the Court turns to the issue of whether Plaintiffs have requested a reasonable modification which would allow them an exception to the general prohibition on operation of golf carts on sidewalks.

Notably, the ADA regulations provide guidance as to the obligation of a public entity to an individual with a disability in the delivery of its services or programs. Under the regulations, the focus is on "accessibility":

> [N]o qualified individual with a disability shall, because a public entity's facilities are *inaccessible to or unusable by individuals with disabilities,* be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

28 C.F.R. § 35.149 (emphasis added). "Difficulty in accessing a benefit, however, does not by itself establish a lack of meaningful access." *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1329 (N.D. Ga. 2017). For example, in *Ganstine v. Sec'y, Fla. Dep't of Corr.*, an inmate claimed that the Florida Department of Corrections discriminated against him because he was unable to access areas of the prison in his wheelchair. 502 Fed.Appx. 905 (11th Cir. 2012).[3] The Eleventh Circuit held that the inmate was not denied meaningful access to certain areas of the prison because inmate orderlies were available "most of the time" to help him go "wherever he needed to go." *Id.* at 910. On the rare occasion that the orderlies were not available, the inmate could usually push himself to a destination. *Id.* at 910-11. Therefore, the inmate had meaningful access to the prison facilities even though the orderlies were not always available to help him access the area in the prison where he wanted to go, and even though his access was sometimes inconvenienced by the need to push himself in his wheelchair.

---

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

Plaintiffs argue that they are entitled to a modification to Defendant's enforcement of Florida law such that they are able to drive a golf cart on the sidewalks of Pasco County. However, the modification that Plaintiffs seek is not necessary to prevent meaningful access to the sidewalks and to avoid discrimination on the basis of disability. During her deposition, Mrs. Boudreau testified that she preferred to use a golf cart because she did "not like being exposed [to] other people" (Doc. 40, W.B. Dep. 44:5-15). Mrs. Boudreau reiterated that she did not like taking public transportation because she likes to have privacy and the ability to take herself places and have her own personal mode of transportation and personal freedom (Doc. 40, W.B. Dep. 44:20-24). In limiting the analysis to Plaintiffs' use of the sidewalk and not considering access to other forms of transportation (i.e., bus, rideshare, personal vehicle, etc.), a golf cart is not necessary to have meaningful access to the sidewalk. Other alternatives include travelling in a motorized scooter, even one with a basket or other storage compartment that allows Plaintiffs to transport their belongings. Plaintiffs' argument that alternate mobility devices are insufficient because they do not allow Plaintiffs to travel together and the time it would take to travel would increase does not significantly alter Plaintiffs' meaningful access to the public sidewalks. Rather, the Court must look at Plaintiffs' capacity to access the benefit. *See PGA Tour, Inc. v. Martin,* 532 U.S. 661 (2001).

In *PGA Tour, Inc. v. Martin,* a professional golfer who suffered from a malformation of his leg sued a golf association, alleging that the association's rule banning the use of golf carts violated the ADA. 532 U.S. at 668. In finding for the

11

golfer, the Supreme Court noted that his requested accommodation to a golf cart to get around the golf course was necessary for him play the course at all. *Id.* at 682.[4] The Supreme Court contrasted the golfer's circumstances with that of another player with less serious conditions that made walking the course "uncomfortable or difficult, but not beyond their capacity." *Id.* In such cases, the Supreme Court noted that "an accommodation might be reasonable but not necessary." *Id.*

Plaintiffs have not identified any authority to support that the right to travel in the same device or to arrive at their destination faster impacts their meaningful access to the public sidewalks rather than just making it more inconvenient. Instead, as is evidenced in the record, since Defendant's citation, Mrs. Boudreau has utilized a mobility scooter to travel along the same routes (Doc. 41, L.B. Dep. 132:18-21). Nothing in the record suggests that Plaintiffs could only travel or utilize the sidewalk in their golf cart. For instance, Plaintiffs did not enter stores or other establishments in their golf cart. Rather, Mrs. Boudreau testified that when she shopped at Walmart, she would enter using her cane and sometimes use a motorized scooter or a cart, depending on what was available at the store (Doc. 40, W.B. Dep. 72:13-73:8). Thus, when Plaintiffs are shopping and need to travel within the store and hold their merchandise, they sometimes utilize a mobility scooter. It is also worth noting that on both occasions when Sergeant Scilex's stopped Mrs. Boudreau, she was travelling in the golf cart alone without Mr. Boudreau (*see* Scilex Citation Video

---

[4] Although the Title III of the ADA was at issue in *PGA*, the regulations regarding reasonable modifications in Title II are similar to Title III. *See* 28 C.F.R. § 35.130(b)(7)(i).

& Scilex Warning 1 Video). Thus, while Plaintiffs assert that they prefer to travel together in the same vehicle, nothing in the record supports that that anything prevents them from traveling separately due to their disability. Based on Plaintiffs' arguments and deposition testimony, the reasons Plaintiffs chose to travel on Pasco County sidewalks using a golf cart is that they wanted more space to travel together and hold their belongings, more privacy, and to arrive at their location faster. This does not amount to a complete inability to operate an allowed form of transportation on the sidewalks based on their physical disabilities. Therefore, a modification is not necessary for Plaintiffs to meaningfully access the public sidewalks.

### ii.  The Modification Plaintiffs Seek is Not Reasonable

The test to determine the reasonableness of a modification is whether it alters the essential nature of the program or imposes an undue burden or hardship in light of the overall program. *School Bd. of Nassau Cty. v. Arline,* 480 U.S. 273, 287 n. 17 (1987). The reasonable accommodation inquiry "is a highly fact-specific inquiry." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1085 (11th Cir. 2007).

In the instant case, to allow such an exception to Florida Statutes Section 316.212 for Plaintiffs to utilize their golf cart on public sidewalks would pose a greater safety risk to the public. Plaintiffs frequently encountered pedestrians on the sidewalk while using their golf cart, including walkers, bicyclists, and roller-skaters (Doc. 40, W.B. Dep. 76:1-14). In the course of such an encounter, Mrs. Boudreau would blow the horn of the golf cart, causing the pedestrians to step off the path and

out of her way, wait until the pedestrian passed, or even take the golf cart into the grass to provide the pedestrian room to pass (Doc. 40, W.B. Dep. 76:1-77:23). The sidewalks Plaintiffs frequently operated their golf cart on run adjacent to busy roads, including U.S. 19, where Sergeant Scilex issued both the warning and citation to Mrs. Boudreau for operating her golf cart where it was not permitted (Docs. 37 & 39). The undisputed facts indicate that the sidewalks that run parallel to U.S. 19 are typically five feet wide and Plaintiffs' golf cart was at least four feet wide (Doc. 37, ¶5; Doc. 39, ¶4; Doc. 48-5, at 10). During Sergeant Scilex's stop of Mrs. Boudreau, Sergeant Scilex told Mrs. Boudreau that it was illegal for her to drive the golf cart on the sidewalk "unless the County has determined it is safe." (Scilex Citation Video, 15:19:40-20:00). When Mrs. Boudreau says something that is inaudible in the video, Sergeant Scilex responds "that's not my intention ma'am, my intention is to make sure that the public is safe." (Scilex Citation Video, 15:23:49-23:56). Later, Sergeant Scilex speaks to Mrs. Boudreau's daughter and tells her "the problem is it's just not legal and it's just not safe either." (Scilex Citation Video, 15:27:50-27:59). Forcing pedestrians to step off the sidewalk to make room for the golf cart, or in the converse, navigating the golf cart off the sidewalk to make room for the pedestrians, in such close proximity to major roadways poses a clear safety risk to all involved. Thus, to allow Plaintiffs an exception would place not only pedestrians at risk of harm, but also Plaintiffs themselves.

Moreover, Florida law specifically allows a local government entity to enact an ordinance permitting the use of golf carts on sidewalks where, among other

things, "[t]he local governmental entity determines, after considering the condition and current use of the sidewalks, the character of the surrounding community, and the locations of authorized golf cart crossings, that golf carts, bicycles, and pedestrians may *safely* share the sidewalk." Fla. Stat. § 316.212(8)(b)(1) (emphasis added). In the instant case, Defendant does not enact ordinances, and nothing in the record demonstrates that the local governmental entity has determined that golf carts, bicycles, and pedestrians may *safely* share the sidewalks without restrictions. Furthermore, Plaintiffs have rejected the possibility of using any alternative to driving a golf cart on the sidewalks. As mentioned above, Plaintiffs have not established that driving a golf cart on the sidewalk more adequately meets her *disability-related* needs than other alternatives, like a mobility scooter.

After consideration of the Florida law allowing modifications to the prohibition on operation of golf carts on sidewalks, which expressly calls for the consideration of safe use of sidewalks, and that the only alternative proposed by Plaintiffs is that they have unfettered access to operate a golf cart on all sidewalks, the undersigned finds the modification requested by Plaintiffs in this case is unreasonable. *See Young*, 411 F. Supp. 2d at 1306 (finding that the plaintiff's requested modification of state law to permit unfettered access to operate golf cart on public streets was unreasonable as a matter of law). Therefore, under these circumstances, Plaintiffs cannot make a showing that "unfettered access" to all types of roads at all hours is a reasonable modification to allow Plaintiffs to enjoy "meaningful access" to the benefit at issue.

### iii.   Intentional Discrimination

Plaintiffs alleged that Defendant intentionally excluded and/or showed a deliberate indifference to Plaintiffs' rights to use their golf cart on public sidewalks by reason of their disabilities (Doc. 1, ¶¶30-32). While it is not necessary to prove discriminatory intent in order to prove a violation of the ADA or RA, it is when a plaintiff seeks to recover compensatory damages. *Sheely v. MRI Radiology Network*, *P.A.*, 505 F.3d 1173, 1191 (11th Cir. 2007) (stating that "victims of intentional discrimination may recover compensatory damages" while "victims of unintentional discrimination may be limited to prospective relief preventing future violations"). Moreover, to establish deliberate indifference, a plaintiff must show that the defendant "knew that harm to a federally protected right was substantially likely" and "failed to act on that likelihood." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012). To show deliberate indifference, a plaintiff must show that "an official who at a minimum has authority to address the alleged discrimination to institute corrective measures on the organization's behalf and who has actual knowledge of discrimination in the organization's programs and fails to adequately respond." *Id.* at 349 (alterations and emphasis omitted). To qualify, the official must be "high enough up the chain-of-command that his [or her] acts constitute an official decision by the [entity] not to remedy the misconduct." *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1134 (11th Cir. 2019) (quoting *J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017)). To be sure, deliberate indifference is an "exacting standard" and

an official's actions may be deemed deliberately indifferent if his or her response or lack thereof is clearly unreasonable in light of the known circumstances. *Id.*

As an initial matter, the evidence in the record fails to show that Defendant intentionally discriminated against Plaintiffs. Defendant issued eleven other similar citations to persons who were not disabled for unlawfully operating golf carts on Pasco County sidewalks (Doc. 39, ¶26). Furthermore, there is no genuine issue as to any material fact that suggests that Defendant's response or lack thereof was clearly unreasonable in light of the known circumstances. When Mr. Boudreau emailed Captain Stephen Hartnett regarding the interaction between Sergeant Scilex and Mrs. Boudreau, he mentioned that Mrs. Boudreau was wrong to operate the golf cart in the bike path and that the golf cart was their only means of transportation because they are both disabled (Doc. 43, at 43). However, Mr. Boudreau relied on the position that the ADA somehow exempted them from the law, instead of claiming why without a modification to use their golf cart he would not have access to the sidewalk. The record shows that Captain Hartnett responded to Mr. Boudreau's email, asserting that he had sought legal counsel to ensure that Sergeant Scilex's actions were in compliance with the ADA and inviting Mr. Boudreau to further discuss the issue by phone or in person (Doc. 43, at 43). Plaintiffs' request to have unfettered access to all sidewalks via golf cart was not reasonable and Defendant's response was not clearly unreasonable in light of the known circumstances at the time.

By failing to show that Defendant has excluded Plaintiffs from access to the public sidewalks in Pasco County and by failing to show such exclusion was based on Plaintiffs' disability, Plaintiffs failed to meet the threshold requirements to show that Defendant's refusal to grant Plaintiffs a reasonable accommodation for their use of a golf cart on public sidewalks was in violation of Title II of the ADA and Section 504 of the RA.

### B. Injunctive Relief

Plaintiffs seek injunctive relief against Defendant to prevent Defendant from issuing Plaintiffs violations for using their golf cart on public Pasco County sidewalks (Doc. 37). "In the ordinary course, proof of Title II or § 504 violation entitles a plaintiff only to injunctive relief." *Welch v. City of Harts*ell, 423 F. Supp. 3d 1277, 1281 (N.D. Ala. 2019) (citing *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1134 (11th Cir. 2019)). A plaintiff must satisfy a four-factor test before a court may issue a permanent injunction: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

For the reasons stated in this Report and Recommendation, Plaintiffs have not shown that they are entitled to injunctive relief. Having failed to show that Plaintiffs are denied access to a public benefit, Plaintiffs have necessarily failed to

establish that any harm, irreparable or otherwise, would result in the absence of an injunction. Plaintiffs also fail to show they lack an adequate remedy at law because they have not established a violation that requires a remedy.

## IV.    Conclusion

The material facts here are not disputed. Assuming for purposes of these motions for summary judgment that Plaintiffs are qualified individuals with a disability under Title II and Section 504, as a matter of law, Plaintiffs have not been denied the benefits of a public entity's services, programs or activities or otherwise discriminated against by a public entity by reason of their disability.

Further, Defendant is not required to provide the modification of Florida law or its own policies and/or procedures that Plaintiffs seek because it is not reasonable or necessary to avoid discrimination on the basis of disability. Therefore, Defendant is entitled to judgment as a matter of law.

Accordingly, it is hereby

RECOMMENDED:

1. Plaintiffs' Partial Motion for Summary Judgement (Doc. 37) be DENIED; and

2. Defendant's Motion for Final Summary Judgement (Doc. 39) be GRANTED.

IT IS SO REPORTED in Tampa, Florida, this 2nd day of November, 2022.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:      Hon. Virginia M. Hernandez Covington
           Counsel of Record